IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAIL A. MARTIN,<br><br>      Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF<br>SOCIAL SECURITY<br>ADMINISTRATION,<br><br>      Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>CIVIL NO. 05-1035 (JBS)<br><br>**<u>OPINION</u>** |

APPEARANCES:

Richard L. Group, Esquire
BROSS & GROUP, P.A.
102 Browning Lane, Building C-1
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Karen G. Fiszer
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, District Judge:

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of the plaintiff, Gail A. Martin, for Disability Insurance Benefits

under Title II of the Social Security Act.  42 U.S.C. § 401, et seq.  This Court must decide whether the Administrative Law Judge's determination of Plaintiff's residual functional capacity was supported by substantial evidence.  For the reasons stated below, this Court will affirm the decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits.

I.   **BACKGROUND**

   A.   **Procedural History**

   Plaintiff filed an application for Disability Insurance Benefits on May 18, 2002, alleging an onset of disability from August 15, 1996, due to fibromyalgia, Lymes Disease, and chronic pain.  (R. at 48.)  Her application was denied on October 10, 2002.  (R. at 36.)  Plaintiff filed a request for reconsideration on November 29, 2002, (R. at 41) which was denied on February 4, 2003.  (R. at 42.)  Plaintiff filed a timely request for review by an ALJ, (R. at 44) and a hearing was held in Voorhees, New Jersey on February 5, 2004, before Administrative Law Judge Irving A. Pianin.  (R. at 237.)

   ALJ Pianin issued a decision denying benefits on February 18, 2004.  (R. at 21-29.)  Plaintiff filed a timely request for review by the Appeals Council, (R. at 15) which was denied on December 17, 2004.  (R. at 5.)  As a result, the February 18, 2004 decision of the ALJ became the final decision of the

Commissioner of the Social Security Administration.  Plaintiff filed the present action with the Court on February 10, 2005, seeking judicial review of the ALJ's decision.

    **B.**    **Evidence in the Record**

        **1.**    **Personal and Work History**

Plaintiff was born on December 23, 1957. (R. at 48.)  She completed high school and two years of college.  (R. at 241.) Plaintiff alleges that she had an onset of disability on August 15, 1996, due to pain associated with fibromyalgia, a former outbreak of Lyme Disease, and injuries suffered in an automobile accident.  (R. at 54.)  Plaintiff has not worked since that date. (R. at 54.)

Prior to the onset of her alleged disability, Plaintiff was employed as a Wildlife Rehabilitator at the Animal Welfare Association in Voorhees, New Jersey, where she rescued and cared for distressed wildlife.  (R. at 55.)  Plaintiff's position required her to travel around the State of New Jersey; climb trees and crawl on rooftops to rescue animals; carry bales of hay and buckets of feed for the animals; lift cages for cleaning; and keep medical records and charts for each animal.  (R. at 55, 82.) As the director of the facility, Plaintiff was additionally responsible for supervising employees and volunteers and organizing the program.  (R. at 244.)  Plaintiff worked 8-10 hours per day, 7 days per week, and was on call for emergencies

3

24 hours per day.  (R. at 76.)  Plaintiff estimated that the work involved walking and standing for 8 hours per day, and kneeling, crouching, and crawling for approximately 2 hours per day.  (R. at 76.)  The heaviest weight she was required to lift was approximately 100 pounds or more, and she frequently lifted 25 pounds.  (R. at 76.)

Plaintiff testified that she contracted Lyme Disease in the late 1980's and began experiencing general pain in her muscles and joints.  (R. at 244, 252.)  The pain gradually worsened and she experienced forgetfulness and loss of balance.  (R. at 245.)  Eventually, the pain became so great that Plaintiff stopped working.  (R. at 245.)

Plaintiff currently lives with her husband, Charles Martin, and her adult stepson.  (R. at 241.)  On most days, she wakes and immediately takes a painkiller, and then spends most of the day reading or lying on the sofa.  (R. at 83.)  Occasionally, she will do a load of laundry or dust.  (R. at 83.)  Plaintiff stated that she cannot be active for more than one hour before she needs to lie down.  (R. at 84.)  She can put together a grocery list and sometimes accompanies her husband and son to the grocery store, but does not cook.  (R. 83-84.)  Her husband and son do the majority of the house maintenance.  Plaintiff estimates that she can walk for one half of a block before she has to stop and rest for approximately 10 minutes before continuing.  (R. at 85.)

She cannot stand or sit continuously for more than a half hour. (R. at 86.)  She experiences muscle spasms, which cause her to lose her grip on objects and limit her range of motion.  (R. at 85.)  Plaintiff does not drive and rarely socializes.  (R. at 84.)

Plaintiff stated that her entire body hurts all of the time and she feels as though she has the flu.  (R. at 68.)  She suffers from irritable bowels and is extremely sensitive to heat. (R. at. 74.)  She frequently loses her balance and will trip or run into objects.  (R. at 74.)  Plaintiff is forgetful and often feels confused.  (R. at 74.)  Plaintiff testified that her condition has changed her lifestyle; whereas she used to take part in outdoor activities, she no longer is able to do so.  (R. at 68.)  Simply being hugged by friends or family members causes pain.  (R. at 74.)

    2.   **Medical History**

On May 10, 1998, Plaintiff was involved in an automobile accident causing her to strike the posterior part of her skull against a headrest.  (R. at 113.)  On May 13, 1998, Plaintiff visited Dr. Jesse R. Liebman, a chiropractor, complaining of loss of consciousness, severe headaches and nausea.  (R. at 113.) Additionally, Plaintiff complained of a severe stabbing pain in her mid-back and pain in her neck that radiated into her posterior shoulder area and down the center of her back.  (R. at

5

114.)

Dr. Liebman conducted an evaluation and concluded in a lengthy report compiled on April 21, 1999 that Plaintiff suffered from chronic post-traumatic cervical, thoracic and lubosacral sprain and strain and post-traumatic headaches.  (R. at 116-17.) Dr. Liebman treated Plaintiff with hot packs, diathermy, and massage, and instructed her to follow a home exercise program to strengthen her back muscles.  Plaintiff remained in the care of Dr. Liebman until March 3, 1999, at which time Dr. Liebman determined that Plaintiff had reached maximum improvement in her condition.  (R. at 120.)  Dr. Liebman stated that Plaintiff would probably continue to experience pain and discomfort in the thoracolumbar area and recommended that she return for treatment on an as-needed basis.  (R. at 119-20.)

While under the care of Dr. Liebman, Plaintiff was referred to Dr. Peter Jaffe for an evaluation in physical medicine and rehabilitation.  (R. at 116.)  Dr. Jaffe evaluated Plaintiff on November 2, 1998 and agreed with Dr. Liebman's diagnosis of post traumatic cervical, thoracic and lubosacral sprain and strain. (R. at 123.)  Dr. Jaffe advised Plaintiff to continue using Naprosyn and Darvocet for pain and prescribed Soma as a muscle relaxant.  (R. at 123-24.)  Dr. Jaffe also recommended that Plaintiff continue her chiropractic therapy and engage in stretching and strengthening activities, as well as gentle

aerobic fitness conditioning.  (R. at 124.)

Dr. Liebman also referred Plaintiff to Dr. Lawrence Barr for an orthopedic evaluation conducted on November 3, 1998.  (R. at 126-27.)  Dr. Barr's conclusions of post traumatic thoracic and lumbosacral sprain and strain agreed with those of Drs. Liebman and Jaffe.  (R. at 127.)  Dr. Barr stated that Plaintiff had made slow progress and remained impaired with regards to functional capabilities.  (R. at 127.)  He suggested that Plaintiff continue with chiropractic care and begin light aerobic exercise and strength training programs.  (R. at 127.)

Plaintiff visited Dr. Raymond A. Adelizzi of the Arthritis Center of South Jersey on May 4, 1999, complaining of pain "all over."  (R. at 130.)  A rheumatologic exam revealed diffuse tenderness to palpation.  (R. at 131.)  Dr. Adelizzi noted no objective joint abnormalities and stated that Plaintiff had a good range of motion.  (R. at 131.)  He concluded that Plaintiff had "probable fibromyalgia syndrome" with "SLE or Lyme less likely."  (R. at 131.)  Plaintiff did not return for any follow-up evaluations by Dr. Adelizzi.  She later testified that she did not like him and felt that he "blew [her] off."  (R. at. 257.)

Dr. Arthur H. Schultes was Plaintiff's treating physician from May 4, 1989 until November 21, 2001.  (R. 132-59.)  Dr. Alfred M. DiPiero, a rheumatologist, examined Plaintiff on May 25, 1989, and diagnosed her with Lyme Disease. (R. at 156-57.)

7

Dr. Schultes subsequently treated Plaintiff for Lyme arthritis. (R. at 152, 158.)  Dr. Schultes prescribed a number of pain relievers during Plaintiff's treatment, including Naprosyn, Darvocet and Celebrex.  (R. at 138-59.)

Plaintiff began seeing Dr. David F. Headley as her treating physician in June 2001.  (R. at 189-90.)  Plaintiff testified that felt she "wasn't getting anywhere" with Dr. Schultes and felt she "needed someone else to see if they could make a difference."  (R. at 246.)  Dr. Headley diagnosed Plaintiff with fibromyalgia, (R. at 197) and prescribed a Duragesic patch and Percocet during his treatment.  (R. at 192-97.)  In a medical questionnaire completed for the Social Security Administration on July 9, 2003, Dr. Headley identified Plaintiff's symptoms as including musculoskeletal pain, fatigue, excessive sweating and dizziness.  (R. at 199.)  He stated that Plaintiff's pain and fatigue prevented her from performing normal work activities. (R. at 200.)  He estimated that she could perform sedentary work less than 4 hours per day, 3 days per week.  (R. at 203.)

Dr. Headley also indicated that Plaintiff's pain was so significant that it prevented her from performing normal work activities more than 3-4 days per month, and that occasionally her pain was "profound and intractable; it virtually incapacitates [her]."  (R. at 200.)  Dr. Headley made similar findings on Plaintiff's fatigue, indicating that it was always

present and occasionally incapacitating.  (R. at. 200.)[1]

## II.  **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the

---

[1] As discussed below, Plaintiff only met the insured status requirements for Disability Insurance Benefits through December 31, 2001.  Therefore, Plaintiff was required to establish a disability on or prior to that date, and subsequent evidence of her condition is not relevant to the analysis.  Nevertheless, the record contains additional medical evidence.  In January 2003, Plaintiff began seeing Dr. Kathleen L. Ryan at a Sleep Diagnostic Center for treatment of sleep apnea.  (R. at 170-82.)  On February 13, 2003, Plaintiff saw Dr. Bruce B. Levin for corrective surgery to relieve a painful bunion and a deformity on her left foot.  (R. at 161.)  Finally, on February 12, 2003, Plaintiff began seeing Dr. Ellinor Burke for treatment of depression.  (R. at 206-14.)

9

Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Commissioner, 220 F.3d 112, 122 (3d Cir. 2000) (emphasis added).  Similarly, an ALJ must consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:
> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is

10

> supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  A district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder," Williams, 970 F.2d at 1182, and an ALJ need not explicitly discuss every piece of relevant evidence in his decision.  See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  See Sykes, 228 F.3d at 262.  See also Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

### A.   Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. §1382c(a)(3)(A).  Under this definition, a claimant qualifies as disabled only if her physical or mental impairments are of such

11

severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  See id. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. Id. In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas, 823 F.2d at 777. See Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

Here, ALJ Pianin concluded that Plaintiff was not under a disability as defined under Title II of the Social Security Act at any time through December 31, 2001, the date Plaintiff's disability insured status expired.[2] (R. at 29.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful work since the alleged onset of her disability on August

---

[2] Title II of the Social Security Act provides disability insurance for individuals whose employment is interrupted or prematurely terminated by incapacitating illness or injury. Claimants hold insured status over the period in which they accrued 20 quarters of social security coverage, as defined in 42 U.S.C. § 413, out of the last 40 quarters. 42 U.S.C. § 423(c)(1). Plaintiff met the disability insurance benefits requirements and was insured for disability benefits through December 31, 2001.

15, 1996.  (R. at 22.)  At Step Two, ALJ Pianin found that Plaintiff suffers from a "severe" impairment within the meaning of the Act due to fibromyalgia, which caused significant vocationally relevant limitations.  (R. at 23.)  The ALJ found no evidence in the record to show that Plaintiff's depression, thyroid disorder, or sleep apnea existed prior to December 31, 2001, and therefore found that those impairments were not considered severe.  (R. at 23.)  At Step Three, the ALJ found that the impairments did not meet or equal the criteria of an impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23.)  At Step Four, the ALJ concluded that Plaintiff could not return to her prior employment.  (R. at 26.)  The ALJ therefore proceeded to Step Five of the sequential analysis process and found that Plaintiff retained the residual functional capacity to perform a significant range of light work as defined in 20 C.F.R. § 404.1567.  Therefore, the ALJ found Plaintiff "not disabled" and denied her request for Disability Insurance Benefits.  (R. at 19-20.)

### III. DISCUSSION

Plaintiff argues that the Commissioner's decision denying her benefits is in error because the ALJ failed to properly determine her residual functional capacity, specifically for failing to afford proper weight to the opinions of Plaintiff's treating physicians, and failing to recontact Plaintiff's

14

treating physician for additional evidence.

The sequential evaluation process for determining disability requires an assessment of the claimant's functional limitations and her remaining capacities for work-related activities, referred to as the claimant's residual functional capacity ("RFC").  See SSR 96-8P.  A claimant's RFC represents her maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.[3]  Id.  The RFC assessment considers the functional limitations that result from an individual's medically determinable impairments, and provides a function-by-function assessment of the claimant's ability to do work-related activities.  Id.  The claimant's RFC assessment is used at Step Five of the sequential evaluation process to determine whether the claimant retains the ability to engage in any type of substantial gainful work that exists in the national economy.  Id.

In this case, ALJ Pianin determined that despite Plaintiff's severe impairment, she retained the residual functional capacity to perform light level work, which requires the maximum lifting of 20 pounds and the frequent lifting of 10 pounds; along with occasional climbing, balancing, stooping, kneeling, crouching and crawling.  (R. at 24.)  Substantial evidence supports the ALJ's

---

[3] A "regular and continuing basis" means eight hours per day, for five days per week, or an equivalent work schedule.  See SSR 96-8P.

15

assessment of Plaintiff's RFC.  ALJ Pianin found that Plaintiff suffered from a severe impairment as a result of fibromyalgia.  Fibromyalgia is a peculiar diseases which does not lend itself to easy diagnosis.  See Lisa v. Secretary of Dep't of Health & Human Servs., 940 F.2d 40, 44-45 (2d Cir. 1991).  People with fibromyalgia suffer from pain in their muscles and soft tissues of the body, but commonly demonstrate consistently normal neurological findings upon examination.  See Preston v. Secretary of Dep't of Health & Human Servs., 854 F.2d 815, 817-18 (6th Cir. 1988)  Therefore, determining a claimant's functional limitations resulting from fibromyalgia requires consideration of the claimant's statements about pain.  In determining the credibility of an individual's statements about pain and its functional effects, an adjudicator must consider the individual's statements along with the rest of the relevant evidence in the case record, including the objective medical evidence, statements and other information provided by treating or examining physicians and other persons about the symptoms and how they affect individuals.  See SSR 96-7p.

     In this case, ALJ Pianin adequately considered the relevant evidence in the record and his decision of not disabled is supported by substantial evidence.  ALJ Pianin first considered Plaintiff's own statements about her condition and concluded that her assertions concerning her impairments were not fully

credible. (R. at 24.)  Plaintiff testified that her pain feels like she constantly has the flu, although the location of the pain varies day to day. (R. at 24.)  She stated that the pain patch she has been prescribed helps somewhat, although she is extremely fatigued and must nap during the day. (R. at 24.) Plaintiff testified that she is able to perform limited housework.  She occasionally socializes and is able to drive. (R. at 24.)  Additionally, ALJ Pianin considered the testimony of Jean Cramer, a friend of Plaintiff's since 1984. (R. at 24.) Ms. Cramer testified that Plaintiff is in pain all of the time. She stated that on good days, Plaintiff may "putter," but otherwise she just sits and watches television. (R. at 24.)

   ALJ Pianin concluded that Plaintiff's complaints regarding the severity of her limitations could not be considered fully credible in light of the supporting medical evidence. (R. at 25.)  The ALJ found no objective medical evidence in the record demonstrating that Plaintiff's impairments were as severe as her testimony indicated. (R. at 25.)  Specifically, the record failed to show that Plaintiff required any emergency room treatments, hospitalization, significant active treatment, or significant office care other than for routine maintenance. (R. at 24.)  Plaintiff did not receive any specific physical treatment or therapy for pain. (R. at 24-25.)  Instead, ALJ Pianin noted, the records of Plaintiff's treating physician

17

showed that in 2001 her pain was moderate and controlled with medication, and her physical examinations were essentially normal. (R. at 25.)

The ALJ also obtained the opinion of a vocational expert to determine whether an individual with Plaintiff's functional capacity to perform light work would be capable of performing work which exists in significant numbers in the national and regional economies, taking into account her age, educational background and work experience. (R. at 27.) The ALJ adopted the vocational expert's opinion that Plaintiff was capable of performing such jobs as office helper, cashier, or locker room attendant. (R. at 27.)

Plaintiff claims that the ALJ did not give controlling weight to the findings of her treating physician as required under the regulations. (Pl. Br. at 12.) Specifically, Plaintiff claims that the ALJ failed to afford controlling weight to the responses given by Dr. Headley in the Residual Functional Capacity Questionnaire completed on June 30, 2003. (R. at 198-204.) In the questionnaire, Dr. Headley indicated that Plaintiff's pain and fatigue would allow her to perform sedentary work less than four hours per day, three days per week. (R. at 203.) Plaintiff claims the ALJ gave little weight to Dr. Headley's opinions and gave no rationale for rejecting them.

Generally, more weight must be given to opinions from a

18

treating source.  20 C.F.R. § 404.1527(d)(2). However, medical source opinions on issues specifically reserved to the Commissioner are not entitled to controlling weight.  20 C.F.R. § 404.1527(e).  A claimant's residual functional capacity is considered such an issue, so that Dr. Headley's opinion about Plaintiff's residual functional capacity was not entitled to any special significance.  Id.  ALJ Pianin specifically cited the regulation in his opinion as rationale for not affording Dr. Headley's opinion controlling weight.  (R. at 25.)  He further concluded that the opinion was inconsistent with the rest of Dr. Headley's treatment notes.  Specifically, a July 2001 examination – the last examination relevant to the ALJ's analysis – revealed that Plaintiff's physical examination was within normal limits, and that she was getting adequate relief from her pain from her prescribed Duragesic patch.  (R. at 26, 189.)

   Plaintiff also claims that the ALJ erred in failing to recontact Dr. Headley for additional evidence.  When evidence from a treating physician is inadequate to determine whether a claimant is disabled, the regulation require the adjudicator to seek additional evidence or clarification.  See 20 C.F.R. § 404.1512(e).  In this case, however, ALJ Pianin did not find the evidence from Dr. Headley inadequate to make a determination.  Conversely, he found the evidence as supportive of a finding of not disabled.  (R. at 26.)  Plaintiff's argument that the failure

19

to recontact Dr. Headley requires the case to be remanded is unfounded.

In summary, the Commissioner's decision is supported by substantial evidence in the record and the determination that Plaintiff is not disabled within the meaning of the Act shall be affirmed.

## IV.   CONCLUSION

For the reasons stated above, the Commissioner's decision denying Plaintiff's application for Disability Insurance Benefits is affirmed.  The accompanying order is entered.


**March 22, 2006**          **s/ Jerome B. Simandle**
Date                         Jerome B. Simandle
                             United States District Judge